## Seitz *v.* Mitchell.

1. The rule of equity practice, that when a defendant's answer under oath ex pressly negatives the allegations of the bill, and the testimony of one person only affirms them, the court will not decree in favor of the complainant, does not extend to so much of the answer as is not directly responsive to the bill.

2. Purchases of real or personal property, made during coverture, by the wife of an insolvent debtor, are justly regarded with suspicion. She cannot prevail in contests between his creditors and her, involving their right to subject property so acquired to the payment of his debts, unless the presumption that it was not paid for out of her separate estate be overcome by affirmative proof.

3. The earnings of the wife while cohabiting with her husband are not, by the Revised Statutes relating to the District of Columbia, made her separate property. She can have them only by his gift, and it is not protected against his creditors.

Appeal from the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

*Mr. A. G. Riddle* and *Mr. Francis Miller* for the appellant.

*Mr. R. Ross Perry*, contra.

Mr. Justice Strong delivered the opinion of the court.

The complainant in the court below sought to subject two pieces of real property in the city of Washington to the payment of several judgments recovered by the firm, of which he is the surviving partner, against George Seitz, one of the defendants. His bill alleges the recovery of those judgments, one on the ninth day of June and the other on the fourteenth day of December, 1868, the issue of executions thereon, and returns of *nulla bona* made by the marshal. It alleges further, that George Seitz, on the thirteenth day of January, 1870, purchased from one Kendall lot No. 61 in square 448, in the city of Washington; and, knowing of the judgments obtained against him, conspired with his wife, Mary E. Seitz, the other defendant, to delay and hinder the judgment creditor, by procuring the deed from Kendall to be made to the wife. The bill then charges that the deed was so made; that the purchase-money for the lot was paid by George Seitz with money earned by himself, to which his wife had no title whatever; and that a deed of trust was given to Kendall to secure a balance of unpaid purchase-money, which deed was

subsequently released to George Seitz and Mary E. Seitz. The entire purchase-money was $6,500.

The bill sets forth that the other lot, part of lot No. 1 in square 343, was purchased on the eighteenth day of October, 1872, by George Seitz, from one William F. Mattingly, for the sum of $6,000, and that it was also conveyed to Mary E. Seitz. The purchase-money was paid, it is alleged, with money borrowed from the Arlington Fire Insurance Company, and secured by deed of trust of both properties, which money, the bill charges, George Seitz, and not Mary E. Seitz, is bound to pay.

This second conveyance is also averred to have been made to the wife, with intent to hinder, delay, and defraud the husband's creditors; and the prayer of the complainant is that both lots may be subjected to the lien of the complainant's judgments, and that a trustee may be appointed to sell the property for the satisfaction of said liens out of the proceeds of the sale, after paying all expenses thereof, and all prior liens.

Such is the case made by the bill. No discovery is asked and no interrogatories are propounded.

The answer admits the recovery of the judgments as charged, but denies that George Seitz purchased the property or paid for the same, or owned or advanced any money to pay for the same, and denies also all fraud. It avers, on the contrary, that Mary E. Seitz, in her own right, and in her own name, and for her sole and separate property, purchased the Kendall lot, and took the deed in her own name; that she paid the purchase-money, to wit, $1,000 in hand and the balance on deferred time, all out of her own means and money earned and procured wholly by herself, and not from the said George, nor by or through him or his exertions; and that he signed the notes for the deferred payments and joined in the deed of trust at the request of the vendor, and not because he had any interest in the transaction.

The answer further states that the property bought from Mattingly was purchased by the wife for herself in her own name and in her own right; that she negotiated the loan with the Arlington Fire Insurance Company; that the whole transaction was hers, and not that of her husband; that he had

nothing to do with it except as her agent, or to express his assent for the satisfaction of other parties. To this answer a general replication was put in, and evidence has been taken on behalf of the complainant. The defendants have rested on their answer alone.

The general rule of equity practice is, that when a defendant has, by his answer under oath, expressly negatived the allegations of the bill, and the testimony of one person only has affirmed what has been negatived, the court will not decree in favor of the complainant. There is then oath against oath. In such cases there must be two witnesses, or one with corroborating circumstances, to overbear the defendant's sworn answer. The reason for this is, that the complainant generally calls upon the defendant to answer on oath; and he is, therefore, bound to admit the answer, so far as he has called for it, to be *prima facie* true, and as worthy of credit as the testimony of any other witness. This rule, however, does not extend to averments in the answer not directly responsive to the allegations of the bill, for the complainant has not called for them. It is always to be considered, therefore, when the rule is attempted to be applied, how far the averments of the answer are responsive to what is alleged in the bill. In the case before us, the defendants' answer denies that George Seitz purchased the Kendall lot, or paid for the same, or owned or advanced any money to pay for the same. So far it is responsive to the complainant's allegations. But the answer furnishes no evidence that the wife had any separate property, or any means or money of her own with which to pay the purchase-money of the lot conveyed to her. Nor do the proofs taken exhibit any such evidence. George Seitz and Mary his wife lived together. He carried on a bakery, and she attended to the duties of the house. There were four or five boarders in the house, paying monthly from $20 to $30 each. There is nothing to show that the wife had any opportunity for obtaining money except from her husband. Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such

purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof. Such has always been the rule of the common law; and the rule continues, though statutes have modified the doctrine that gave to the husband absolutely the personal property of the wife in possession, and the right to reduce into his possession and ownership all her choses in action. Authorities to this effect are very numerous. In *Gamber* v. *Gamber*, 18 Penn. St. 306, a case where a wife claimed personal property against the insolvent estate of her deceased husband, it was said by the court: "In the case of a purchase after marriage, the burden is upon the wife to prove distinctly that she paid for it [viz., the property purchased by her] with funds which were not furnished by the husband." In *Keeny* v. *Good*, 21 id. 349, where the contest was between a wife and her husband's creditors, it was ruled that mere evidence that she purchased the property during the coverture is not sufficient to give her title; that it must satisfactorily be shown that the property was paid for with her own separate funds, and that, in the absence of such evidence, the presumption is a violent one, that the husband furnished the means of payment; and it was held that this rule applies to real as well as to personal estate. So in *Walker* v. *Reamey*, 36 id. 410, a contest respecting real estate, where the purchase was made by a wife in her name, and where the money paid upon the contract, so far as payment was shown, was paid by her, it was held that a married woman, claiming in opposition to her husband's creditors, property purchased after marriage, must show that she had received money "by will or descent, conveyance or otherwise, and had invested it in the property claimed." It was also said not to be enough that she was seen in the frequent possession of money after the passage of the married-woman's act of the State, for in such case the presumption is that it was the husband's money. So in *Parvin* v. *Capewell*, 9 Wright, 89, it was decided that the mere possession of

money by a wife is no evidence of her title in an action by a creditor of the husband, and when there is no evidence save possession, the jury should be instructed to find for the creditor. *Vide* also *Bradford's Appeal*, 5 Casey, 513, and *Aurand* v. *Shaeffer*, 7 Wright, 363. So property purchased by a married woman on credit, or with her earnings, has been held to be subject to the levy of an execution against her husband. *Robinson* v. *Wallace*, 3 id. 129. All these decisions were made after the enactment of a statute giving to married women rights of property as against the husband and his creditors, at least as broad as any which exist in the District of Columbia. And similar decisions have been made in other States where like statutes have been enacted. *Switzer* v. *Valentine*, 4 Duer (N. Y.), 96; *Glann* v. *Younglove*, 27 Barb. (N. Y.) 480; *Woodbeck* v. *Havens*, 42 id. 66; *Rider* v. *Hulse*, 24 N. Y. 372; *Connors* v. *Connors*, 4 Wis. 131; *Elliott* v. *Bentley*, 17 id. 610; *Edson* v. *Hayden*, 20 id. 682; *Duncan* v. *Roselle*, 15 Iowa, 501; *Cramer* v. *Redford*, 17 N. J. Eq. 367. Many of these cases relate to the ownership of the wife's earnings; and nowhere, so far as we are informed, has it been adjudged that her earnings or the product of them, made while she is living with her husband and engaged in no separate business, are not the property of the husband when the rights of his creditors have been asserted against them. Certainly the acts of Congress respecting the rights of married women in this District do not assure such property to the wife. Sect. 727 of the Revised Statutes relating to the District of Columbia is as follows: —

"In the District, the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts."

Sect. 729 gives a married woman power to contract, to sue and be sued in her own name in all matters having relation to her sole and separate property. No other power to contract is given to her. Her earnings while cohabiting with her husband are not made her property. She can have them only by the

gift of her husband, and such a gift is not protected against his creditors.

Applying the principles settled by the authorities we have cited to the pleadings and proofs in the present case, it is free from doubt. The answer does not aver that Mrs. Seitz paid for either of the lots conveyed to her out of her separate property. It does not aver that she had any separate property, nor does the proof show that she had any. The entire purchase-money of the lot obtained from Mattingly was paid with money borrowed from the Arlington Fire Insurance Company, for which George Seitz and his wife gave their notes, accompanied by a deed of trust of that lot, and of the one obtained from Kendall. For the payment of those notes, George Seitz is personally liable, and his wife is not. It is not averred or proved that she has paid out of her own means, or in any way, even one cent of that debt.

And in regard to lot No. 61, purchased from Mr. Kendall, the proof is that the negotiation for the purchase was commenced by the husband. He called upon the vendor, and obtained information of the price and of the terms. A month afterwards, the husband and wife went to the vendor's office, and the bargain was there consummated and the deed was given. One thousand dollars, part of the purchase-money, was paid by Mrs. Seitz in the presence of her husband; four promissory notes, each for $600, and one for $3,100, were given for the remainder. All these notes were signed by the husband and the wife; and a deed of the lot in trust, signed also by the husband and wife, was given to secure the payment of the notes. No evidence has been submitted to show that the first thousand dollars, the down money, was not the property of the husband; while the law presumes that it was, in the absence of proof to the contrary, beyond her having possession of the money. And it does not appear that Mrs. Seitz ever paid any portion of the notes given for the remaining purchase-money. They have all been paid, except a small balance of about $100; and the proof by two witnesses is, that the payments were principally, if not wholly, made by George Seitz himself. The allegation of her answer that she paid the purchase-money is, therefore, disproved. But, were it true, it would not avail her,

unless she paid it with her own separate property. She avers that she paid it with means and money earned and procured wholly by herself. Of that there is no proof, nor attempt to adduce proof; though, if the fact were so, the means of proving it must have been peculiarly within her knowledge and power, and we have already observed that money procured by her earnings belonged to her husband, and was not her separate property. To hold that conveyances thus taken and thus paid for are sufficient to protect the property against creditors of an insolvent husband would be making fraud both profitable and easy.                    *Decree affirmed*