Morris, D. J.
Bill in equity to set aside certain deeds as fraudulent and void, and in fraud of the provisions of the bankrupt act.
It appears from the proceedings and testimony that in 1868 Augustus Morse was the proprietor of the City Hotel,, in Annapolis, which he had purchased, but had not paid for; that the furniture of the hotel belonged to his wife; that he *326 was generally known to be in doubtful credit, difficult to collect any money from, and was, in reality, insolvent. In 1868 a property adjoining the hotel, on the Duke of Gloucester street, was offered at auction by the heirs of” John Campbell, and was knocked down to Morse for $1,800, and he then ostensibly became the owner of it; that on the fifth of November, 1869, a deed was put on record, signed by the heirs of Campbell, conveying the property to Morse’s wife, the deed being dated and acknowledged on the third of August, 1868, which was about the date of the sale; that on the eighth of November, 1869, a deed was executed and recorded, conveying the property from Mrs. Morse to Samuel Barth, in consideration of $2,300; that on the tenth of May, 1869, a lease was executed and recorded, by- which, in consideration of $1,000 and the reservation of a rent of $48 a year, extinguishable upon the payment of $800, the property was conveyed by Barth to Martha R. Wilson; that on the twenty-first of April, 1869, Morse, on his own petition, was declared a bankrupt, and the complainants were, subsequently, appointed his assignees.
The bill alleges that the consideration for the property conveyed by Campbell’s heirs to Caroline Morse was not paid by her but by her husband, and that Morse procured the deed to be made to her with design to defraud his creditors, and that the deed was kept unrecorded for fifteen months in furtherance of that- design,, he, in the meantime, holding himself out as the owner; that the consideration in the deed from Caroline Morse to Barth was not paid to her but to her husband, and that Morse caused said deed to be made to Barth, who then, had reasonable cause to believe Morse was insolvent or acting in contemplation of insolvency, with a view to prevent his property from coming to his assignee in bankruptcy, and in fraud of the provisions of the bankrupt act.
The bill prays for a decree against Barth, and that Mrs. Wilson, may be decreed to hold the property under the lease to her for the benefit of the assignees, and prays for other relief.
The answers aver the good faith of all the transactions.
*327 The testimony of Barth shows that he lived in Baltimore, and for a year or more prior to 1868 he had been dealing with Morse, and supplying the hotel with liquors, and that in November, 1868, Morse owed him a balance of $398.75; that prior to the fifth of November, 1868, he cashed a draft for Mrs. Morse for $625, drawn by her on her son-in-law in Massachusetts, with which money she proposed to pay a balance due on the purchase money of the property in question; that the draft came back to him protested, and he went to Annapolis to see Mrs. Morse about it; that she said to him she had expected the money from Massachusetts, but had been disappointed, and proposed to sell him the property for $2,300; that he consented to take it at that price, provided she allowed him, as a payment on account of the purchase, the debt of $398.75 due him by her husband, together with the draft he had cashed for her; that upon these terms he made the purchase, and paid to her the balance of the purchase money.
The contention of the complainants is that Barth knew that Morse had for a long time been insolvent, and knew that the property conveyed to his wife was paid for by him and conveyed to her in fraud of his creditors, and that Barth’s purchase of the property was a method of securing the debt due him by Morse, and for that reason he aided Morse in conveying away the property in fraud of the bankrupt act.
The testimony shows that Barth in November, 1869, had good reason to believe that Morse was insolvent, and had been so for some time; but there is no evidence to show that he had any knowledge that the property had not been bought by her, or that the money which had been paid on account of the purchase of the property in question was not Mrs. Morse’s money, as she claimed. The testimony of Mrs. Morse, and of her husband and her son, tend to show that she did pay the money out of her own funds. Mrs. Morse, in her testimony, says: “I purchased the house on the Duke of Gloucester street, in Annapolis, from Mary A. Campbell and others. The deed was not put on record, because the purchase money was not all paid until November, 1869. The last payment was pro *328 cured by a draft on my son-in-law for $600 or $700, indorsed by Barth, which he paid. The balance of the money I obtained from the sale of real estate in Massachusetts belonging to myself, conveyed to me by deed, and I received some money from my sister.”
The son testifies that he knows that his mother received the money from the sale of property in Massachusetts belonging to her from being present at the sale; and Mr. Morse, the husband, testifies that all the money paid for the property belonged to his wife, except what was furnished by Barth. It was held by the supreme court of the United States, in Leitz v. Mitchell, 94 U. S. 580, that purchases of real or personal property made during coverture by the wife of an insolvent debtor are justly regarded with suspicion, and that she cannot prevail in contests with his creditors unless the presumption that it was not paid for out of her separate estate be overcome by affirmative proof, and that the burden is upon the wife to prove distinctly that she paid for it with funds not furnished by her husband. This doctrine has been fully adopted and applied by the court of appeals of Maryland, in the recent case of Henkle v. Wilson, October 7, 1879. And in the present case it may well be that if this was a contest between Mrs. Morse and her husband’s creditors, or his assignees in bankruptcy, the testimony given by herself, her husband and her son, although not contradicted or impeached, or shaken in any way, (it having been taken in Brooklyn, under commission and without cross-examination,) might not satisfy the court as to the source from which she obtained the money paid for the property, other than that furnished by Barth. But this is not a contest with her, but a contest with one claiming to be a bona fide purchaser from her without knowledge of any weakness in her title.
If the deed from Campbell’s heirs had been made to Morse and the property then conveyed to his wife, the case would be clearly within the rule in Green v. Early, 39 Md. 223. The deeds would have disclosed that it was an acquisition of property by her from her husband, and Barth would have taken from her no better title than she had, and if she could *329 not defend her title neither could he; hut in the present case there was nothing, so far as the proof shows, to affect Barth with notice of any defect or latent equity in her title, except the fact that, at the time he was negotiating with her, her husband was insolvent, and had probably been so for a considerable time previous. Granting that this was sufficient to have put him upon inquiry, what could he have learned? Both Mr. and Mrs. Morse then asserted that her money had been paid for the property, and they now, when they have less interest in the matter, solemnly swear to it, and the husband’s creditors have been able to produce no direct evidence to discredit their statements.
Circumstances amounting to mere suspicion of fraud are not' to be deemed notice, and where an inference of notice is to affect an innocent purchaser it must appear that the inquiry suggested would have, if fairly pursued, resulted in the discovery of the defect, where the title of the wife does not come through a conveyance from the husband, and is in form perfect, although impeachable by his creditors. I know of no case in which the title of a purchaser from her, having no knowledge of the weakness of her title, has not been upheld; and in the present ease, without some authoritative decision, in the face of the affirmative testimony in support of the payment by her of the consideration of the deed to her, I should not feel justified in setting aside her conveyance to Barth. Sedwick v. Place, 12 Blatch. 174, affirmed, 95 U. S. 3; Fletcher v. Peck, 6 Branch, 133; Anderson v. Roberts, 18 Johnson’s Rep. (N. Y.) 515; Ledyard v. Butler, 9 Paige, 132.
The fact that in the purchase of the property by Barth he secured a debt due to him by the husband does not render the conveyance by the wife to him assailable. If the property was hers, and she chose to appropriate any part of it to the payment of any particular creditor of her husband, it is not a matter by which his assignee in bankruptcy or creditors are affected. Stewart v. Platt, Sup. Ct. U. S., October 7, 1879, reported in 12 Chicago Legal News, 201.
Bill dismissed.