## UNION TRUST Co. *v.* FISHER and others.[1]

*(Circuit Court, D. Minnesota.   October, 1885.)*

1. FRAUDULENT CONVEYANCE—PURCHASE BY WIFE WITH EARNINGS AGREED TO BE PAID BY HUSBAND.

    In 1871 and 1872, M. F. and her husband, F. A. F., kept a lodging-house, the wife attending to the duties of the house under agreement with the husband that he would pay her what it would cost to keep a servant.   The wife had no other opportunity of making money, and the $300 thus earned was not paid to her by the husband, but in 1881 he purchased a lot and had the title put in her name, in part payment of the amount and the accrued interest.   F. A. F. had previously been adjudged a bankrupt, but had not included the indebtedness to his wife in the schedule of debts filed.   *Held,* that the property in the name of M. F. was subject to the payment of judgments against F. A. F.; following *Seitz* v. *Mitchell,* 94 U. S. 584.

2. SAME—EVIDENCE—FRAUD PROVEN.

    On examination of the circumstances surrounding the transfer and purchase of property claimed to be in fraud of creditors, *held,* that such property, with the exception of a certain leasehold estate, should be subjected to the payment of the judgments obtained against defendant.

In Equity.

*H. C. Whitney* and *Wilson & Lawrence,* for complainant.

*Boardman & Ferguson,* for defendants.

NELSON, J.   A judgment was entered against the defendant F. A. Fisher on April 23, 1883, for $12,161.24, in the district court of Hennepin county, in the state of Minnesota, and execution issued, which was duly returned unsatisfied on June 8th following.   A bill is filed by the judgment creditor to reach and subject to the lien of the judgment certain real property standing upon the records of the county of Hennepin in the name of the defendants, Marion Fisher, his wife, Thomas J. Fisher, his brother, and Andrew J. Boardman, charging that this property was placed in the name of these parties for the purpose and with the intent to hinder, delay, and defraud the creditors of Freeman A. Fisher, and to conceal the same, and prevent its application to and for the payment of his debts.   The real estate in the name of his wife is described as lots 16 and 17, in block 5, in South Minneapolis addition to Minneapolis, in the state of Minnesota, and was conveyed to her for the consideration of $700 by R. W. Jordan and wife, June 13, 1881, and duly recorded; also lot 5, in block 34, in Wilson, Bell & Wagner's addition to Minneapolis, conveyed by Nellie B. Shattuck about April 12, 1882, for the sum of $2,000.   And the bill charges that Freeman J. Fisher paid the consideration for all this property, and his wife paid no part of it, and that the conveyances were made to her to defraud creditors, and upon a secret trust for him.

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

The bill further charges in substance that Thomas J. Fisher took a conveyance, which was duly recorded, from Freeman A. Fisher and wife, March 11, 1881, of land in Minneapolis, described as follows:

"Commencing at a point on the line dividing block 61, in the original town (now city) of Minneapolis, according to the plat thereof on file in the office of the said register of deeds, from Third street, 110 feet distant from Utah street, (now First avenue north;) thence running south-easterly with the line of said Third street, 55 feet; thence south-westerly at right angles with Third street, 165 feet; thence at right angles towards Utah street and parallel with Third street, 55 feet; thence at right angles north-easterly to the place of beginning."

The consideration in the deed purported to be $9,625, but it is alleged that Thomas J. Fisher received and accepted the deed for the purpose of defrauding creditors, etc. Thomas also has a deed for one-half of lots 8 and 9, block 73, in Minneapolis, and the bill alleges that this purchase was made from Robert Kelley by one Dodson, for his benefit and that of F. A. Fisher, and on April 19, 1883, Kelley transferred the lots by deed to Dodson and Thomas A. Freeman, and that the latter paid no part of the consideration, but that it was paid by Freeman and put in Thomas' name as a secret trust and to defraud creditors.

In July and August, 1874, the defendant Freeman A. Fisher, a member of the firm of Farnam & Fisher, borrowed from the complainant, a citizen of Illinois, about $10,000, giving the firm notes for the loan. Farnam & Fisher were proprietors of the State Flouring-mill at Chicago, and Fisher was also a builder and contractor. The firm failed before the loans made by the complainant were paid. On March 8, 1875, the complainant obtained judgment in Chicago for $8,180.21, and afterwards, on the removal of F. A. Fisher to Minnesota, in a suit instituted in the Hennepin county district court, recovered a judgment which is the foundation of this suit. On July 14, 1877, the firm of Farnam & Fisher were declared bankrupt on a voluntary petition filed in the district court for the Northern district of Illinois, but Fisher never obtained his discharge. He came to Minneapolis in 1879, and has since been a citizen and resident there, engaged as a contractor and builder.

#### FACTS ABOUT PROPERTY IN NAME OF MARION FISHER.

Marion Fisher, wife of Freeman A., had no separate property or any money to pay for the Jordan lot deeded to her. In 1871 and 1872, 10 years before the deed was executed, she and her husband, F. A. Fisher, were living in Chicago, taking in lodgers. She attended to the duties of the house without any servant. She had no opportunity of getting any money except from her husband, and she states that he agreed to pay her what it would cost to keep a servant if she would do her own work. During this time she saved, as she states, $300, which was not paid, but her husband promised to keep it and give her good interest on it when she wanted to invest it. When the

Jordan property was bought in 1881, and the deed executed in her name, the consideration for the purchase was a part of this $300, and accrued interest, which her husband paid. This indebtedness to her had not been included in the schedule of debts filed by Fisher in the bankruptcy proceedings.

### CONCLUSION AS TO THIS PROPERTY.

The principles settled in *Seitz* v. *Mitchell*, 94 U. S. 584, control this branch of the case in favor of complainants, and this property in the name of Marion Fisher is subject to the payment of this judgment.

### FACTS ABOUT OTHER PIECES OF PROPERTY.

F. A. Fisher negotiated the sale and transfer of them, and the claim is that the wife borrowed the money of Dodson, her husband's partner, and gave her note for the amount, and this money was the first installment, a mortgage being given for the balance. The note has never been paid by her.

### CONCLUSION.

There can be but one opinion about this transaction, although the right to hold this property is strenuously urged by counsel. It is not merely suspicious, but the intent is clear from the facts attending the transaction, and appearing in the record, which are not inserted here. This property, therefore, must be held subject to the judgment.

### THIRD-STREET SHOP PROPERTY.

In February, 1881, Freeman A. Fisher purchased of Long this lot. On the purchase he gave Long his note for $6,000 and mortgage on the lot, payable August 10, 1882, at 7 per cent. interest. The note was sent to Hamlin & Brown for collection, duly assigned February 12, 1882, together with the mortgage and a release of the same. On March 17, 1882, also, Hamlin & Brown sent Long another release, requesting him to sign the same, as F. A. Fisher had sold the lot. This assignment or release was made to F. A. Fisher, and sent to Cashier James Dean, to be delivered to Hamlin & Brown or F. A. Fisher, upon payment of note, $6,000, and interest to May 15, 1882. Dean sent Long a check to pay for same April 6, 1882. This lot was conveyed to Thomas J. Fisher by F. A. Fisher and wife for the consideration expressed in deed of $9,625. No money passed between the brothers. T. J. Fisher claimed to hold his brother's note for $9,625, dated March 11, 1879, which was given for a resale to him of a shop business in Chicago, which Thomas claimed to have purchased of his brother in February, 1877. This alleged sale by Freeman in 1877 was declared to have been fraudulent in the bankruptcy proceedings in Illinois, and the facts developed in this suit about such sale and the pretended resale show them fictitious. With this

alleged note of $9,625 and interest, amounting in all to $11,706.75, Thomas bought the Minneapolis lot, and subtracted from Freeman's indebtedness to him $3,025, leaving $8,681.75 for which a new note is alleged to have been given March 11, 1881. The purchase was subject to the $6,000 mortgage on the property, due August 10, 1882, which was assumed by Thomas. The evidence of Thomas shows that he kept this note of $8,681.75 until May 1, 1883, when he settled with his brother by indorsing on the note $4,960 for a building which Freeman had put on the lot after he sold it, and checks and cash to balance. Freeman A. Fisher paid the $6,000 mortgage assumed by his brother as alleged, and paid a bonus for so doing in April, 1882, before it matured. Thomas says he subsequently paid it in October, 1883, more than one year after due, to one Dodson, F. A. Fisher's previous partner in the firm of F. A. Fisher & Co., who then had it; but Dodson, in his testimony, says he knows very little about it. This, like all other financial and trading transactions between the brothers, is peculiar and bears on its face the evidence of fraud. In all their dealings, extending through a decade or more, few accounts appear to have been kept by the brothers, although many thousands of dollars are involved. The property claimed by Thomas has always been under the control and in the possession of Freeman, the same as before the pretended sales, and no satisfactory explanation is given.

### LOTS 8 AND 9, BLOCK 73.

The last transaction culminated in April, 1883. Dodson, who had been up to April 2, 1883, a partner of Freeman A. Fisher in running the Minneapolis shop, taking contracts and building, purchased, as he claims, Freeman's interest. There was no change of the signs about the building, and the book account was kept as before in the name of F. A. Fisher & Co. Even F. A. Fisher, after the alleged sale to Dodson, continued to sign checks in the same manner and on the same fund, and also worked in the shop as an employe. At this time Dodson purchased of Robert Kelley lots 8 and 9, block 73, described in the bill, for a consideration named of $13,200, less a "mortgage of $6,000 then outstanding, paying $2,200 check, signed F. A. Fisher & Co.," and giving his note for $5,000 at 90 days, and took a deed dated April 9, 1883, running to himself and Thomas A. Fisher. The latter paid no portion of the part payment, and did not sign the note for the deferred payment. Thomas pretends to have paid for this investment as follows: When Dodson bought out Freeman's interest in the business of F. A. Fisher & Co., in April, 1883, he leased of Thomas A. Fisher, who claimed to own it, the shop, which I have decided he did not own, for a rental of $4,750 per year from May 1, 1883, and on that day made an advance payment on account of rent of $1,500, giving Thomas a credit on the Kelley purchase for that amount, and on September 1, 1883, when the $5,000 was due, Thomas surrendered Dodson's note for $2,416, principal and

interest, which he claims to have received from Freeman, May 1, 1883, in part payment of Freeman's indebtedness to him.

If this statement of Thomas is true, he paid $3,916 for one-half of the lot, when the amount due was $3,600. At this time Dodson held the $6,000 Long mortgage, and interest past due, which Thomas assumed on the purchase of the Third-street shop lot from Freeman. No claim is made for payment when his $2,416 note and interest is presented by Thomas as part payment of the Kelley lots. According to Thomas Fisher's and Dodson's evidence, there was due the latter from Thomas at the time of the Kelley purchase, or when the $5,000 note matured, $3,600,—one-half of the amount paid Kelley,—and also the mortgage of $6,000 on the Third-street shop lot. Against this, Thomas held Dodson's note for $2,400, given Freeman in April, 1883, and $1,500 rent for the shop; and Dodson says nothing about the mortgage, but continues to pay for the Kelley lots, taking up his $5,000 note; and when Thomas testifies he paid Dodson in October, 1883, the $6,000, no reasonable explanation is given for this proceeding.

Counsel asserts that when Dodson bought out Freeman, in April, 1883, he found this mortgage part of the assets of F. A. Fisher & Co. This is a lame explanation, and not satisfactory. Even if that is true, Dodson was advancing money for the benefit of Thomas, who was largely in his debt, and fails to pay Freeman, in whose debt he was at this time, according to his own evidence, $2,400. If the purchase of Freeman's interest by Dodson in April, 1883, was fictitious and fraudulent, which the facts and circumstances abundantly show, the acts of the parties are natural.

Without pursuing the case further, I am of the opinion that the charges in the bill of complaint are sustained except in respect of the leasehold estate held by Boardman, and all the other property is subject to the lien of the judgment rendered in the district court of Hennepin county against F. A. Fisher in favor of this complainant.

A decree will be entered in accordance with this opinion.

See Platt v. Schreyer, *ante*, 83, and note, 87.