# WILLS *v.* JONES.

EVIDENCE; LIBEL; PARTNERSHIP; MARRIED WOMEN.

1. In an action by a divorced wife against her former husband for an alleged libel published by him concerning her connection with a certain business in which they had been engaged as copartners while living together, but which had been divided upon their separation and thereafter conducted separately, the divorce proceedings are admissible in evidence in explanation of the relations between the parties.

2. Where a libel is published concerning a partnership business, each partner may sue separately for the injuries he has sustained, or all may join in one suit.

3. Statutes enlarging the rights of married women should be liberally construed.

4. A married woman trading as a *feme sole*, may, under Section 3 of the act of Congress of June 1, 1896, allowing her to trade as such and providing that her earnings shall be her sole and separate property, maintain an action for a libel published concerning her with reference to her business, without the joinder of her husband.

5. To falsely charge a person in writing with having unlawfully interfered with mail matter intended for another is libelous *per se*, as imputing the commission of a criminal offense.

6. The fact that such a charge as published in a periodical purports to have been taken from a bill in equity, does not make it privileged where the publisher filed the bill and the publication was not made in good faith as an item of news in which the public was interested.

No. 834. Submitted November 2, 1898. Decided December 8, 1898.

HEARING on an appeal by the defendant from a judgment on verdict in an action for libel, and from an order overruling a motion in arrest of judgment. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit for libel, in which upon trial in the Supreme Court of the District of Columbia, there was a verdict rendered for the plaintiff, Norma W. Jones, here the appellee, in the sum of $3,000, and thereupon judgment from which the defendant, Walter H. Wills, has appealed.

The appellant and the appellee once bore to each other the relation of husband and wife, and during the continuance of that relation they were engaged as partners under the firm name of W. H. Wills and Company, of which the appellee constituted the company, in the business of the prosecution of pension claims and other claims before the Department of the Interior, where the appellee had been regularly registered and licensed as an attorney. She had been in the business, it seems, since 1882. Subsequently the parties separated, either in 1889 or 1891, and divided the business between them, each taking one-half; and in 1893 the appellee procured a decree of divorce from the

bond of matrimony previously thereto existing between her-
self and the appellant.

After the separation in 1889 or 1891 the appellant con-
tinued the business under his own name of W. H. Wills,
and the appellee under the firm name of N. W. Wills and
Co., the initials being those of her maiden name, which was
Norma Wright. The "company" was first her father, a
merely nominal partner, who died in 1893, and afterwards
her mother, Sarah J. Wright, a lady about seventy years of
age. After her divorce from the appellant the appellee was
married again, and at the time of the institution of this suit
she was the wife of one Robert C. Jones, who, however, was
not joined with her as a party to the suit.

Bickerings seems to have arisen between the appellant
and the appellee with reference to the mail matter addressed
to the firm of "W. H. Wills and Co." Complaints were
made by each that letters appertaining to the part of the
business allotted to one were received and detained by the
other; and it seems also that communications addressed to
the two several firms of "W. H. Wills and Co." and "N. W.
Wills and Co.," became occasionally mixed. Finally the
appellant filed a bill in equity for relief from this condi-
tion of things, and the appellee promptly followed with a
cross-bill; whereupon a receiver was appointed for the busi-
ness of "W. H. Wills and Co.," to take charge of it and to
wind it up.

The appellant, in connection with his business, published
a kind of newspaper or periodical, in two editions of which,
one of September 30, 1896, and the other of February 13,
1897, were printed and published two several statements or
notices, which constitute the alleged libelous matter for
which this suit was instituted. It is shown that about three
thousand copies of the paper were issued and circulated
through the United States and Canada.

The declaration in the case contains two counts, one for
the publication of September 30, 1896, which on the argu-

ment before us on behalf of the appellant.is conceded to be in itself libelous, and the other count for the publication of February 13, 1897, which is denied on behalf of the appellant to have been in itself libelous, the claim in this regard being that special damage must be averred and proved, and that there is neither allegation nor proof of any special damage.    The defendant pleaded the general issue.

At the trial the plaintiff made proof of the publication of the alleged libels, and also of her divorce from the defendant, as well as of the substantial facts heretofore stated. She also testified that it was not true that she had interfered with the mails or with the business of the defendant.    The defendant took no testimony, but at the conclusion of the plaintiff's case requested the court to direct the jury to return a verdict for the defendant.    This request the court denied.    Other instructions were requested on both sides, and to the rulings of the trial court thereon exceptions were duly noted.    There was also a brief charge by the court, of its own motion, to which exceptions were reserved.

As already stated, the jury returned a verdict for the plaintiff in the sum of $3,000.    Thereupon the defendant filed a motion in arrest of judgment, upon which all the questions were raised which are now before us on this appeal; but the motion was denied, and judgment was entered for the plaintiff.

*Mr. D. W. Baker, Mr. John C. Gittings,* and *Mr. Cornell S. Hawley* for the appellant:

1. The claim for damages in the declaration is on the ground that persons have refused to have any further dealings with her (meaning the plaintiff) in her said business and profession.    The only business and profession set up in the declaration being the partnership business, and considering the declaration in this light, the court below should have arrested the judgment, for it is a well-settled principle of law that where the language in regard to the partnership

is actionable *per se*, each of the partners can maintain a separate action for the damages which are personal to himself alone, and in the individual action of the partners no damage suffered by the firm can be recovered. *Noonan* v. *Orton,* 22 Wis. 106; *Duffy* v. *Gray,* 52 Mo. 528; *Robertson* v. *Merchant,* 7 Q. B. 918.

2. If we view the declaration as making no claim to damages on the part of the partnership, but as claiming that plaintiff alone is individually injured, and that she has a right to bring an action to recover individual damages notwithstanding the fact she is a married woman, the motion in arrest of judgment should have been granted, because the declaration shows on its face that the plaintiff is a married woman, and that her husband is not a party plaintiff to the suit. Chitty on Pleading, 83; *Newcomer* v. *Kean,* 57 Md. 122. At common law a suit for an injury to the wife must be brought in the names of both the husband and wife, and this rule has not generally been changed by statute. *Wolf* v. *Bauereis,* 72 Md. 481; 10 Encyc. of Pl. & Pr. 205.

The plaintiff claims no damages for injury to her present business, the same being a partnership business, but claims that she has a right, inherent in her, to carry on business as a *feme sole* trader, and that that right has been injured by the alleged libels, and that that right is a property right in her. We insist that this right claimed by her does not come within the property rights of any of the acts in effect in this jurisdiction, and it is not necessary for the court in deciding this case to say whether or not there can be an action for libel by a married woman in this District where a present property right is affected, but simply to say whether this future right that the plaintiff claims in herself, to carry on some future business, is a property right.

3. But let us consider what right a married woman has in this jurisdiction to bring an action of libel to recover individual damages. Prior to the passage of the last married woman's act it is admitted that the plaintiff would have no

right to bring this suit, there being no distinction in effect between torts for injury to character and torts for injury to property.    In order to enlarge the rights of married women, the act of June 1, 1896, (29 Stat. 193), was passed, amendatory of the act of 1869.    Sections 3 and 4 are the ones relied on by the plaintiff to give her this right of action.    Section 3 enlarges the volume of the property of the married woman by giving her the right to her earnings made in the carrying on of a business or trade, and also gives her the legal right to engage in such business or trade.    It does not give her any right to damages for personal injuries.    Section 4 provides " that a married woman may contract and sue and be sued in her own name in all matters having relation to her sole and separate property in the same manner as if she were unmarried.".    This section must be read together with the provisions of both of the married woman's acts, and contemplates in the married woman a property at the time that the suit is brought and in no way considers any intangible right that she might have to engage in a future business; and then the section goes on to say, "and her husband shall be joined with her when the cause is in favor of or against both her and her husband."

Nowhere in the married woman's act of 1896 are damages for personal injuries bestowed on the wife as her property, and it is necessary for the court to follow the authority alluded to in the case of *Howard* v. *Railroad Co.*, 11 App. D. C. 300.

4. The alleged matter specified in the second count of the declaration is not libelous or does not libel the plaintiff in her individual capacity, and therefore sets out no cause of action whatever against her.    This being so and the verdict being general, the judgment should be arrested.    *Hemming* v. *Elliott*, 66 Md. 197.    The article complained of tells merely of the filing of a certain equity suit, and also informs defendant's clients how to address their letters, and calls the firm of Wills & Co. "so called," which on the face of the

pleadings is true and in no way libelous. The innuendoes can not help the plaintiff, because they are too large and do not state what may be fairly deduced from the statements published; and if we reject the innuendo as surplusage, and the words are not actionable *per se*, the judgment will be arrested. *Gainford* v. *Blatchford*, 7 Price, 544; *Burham* v. *Nethershall*, Yelverton, 22.

*Mr. J. P. Earnest* and *Mr. Chapin Brown* for the appellee:

1. An examination of the declaration shows that the libelous publication in both the circular and the issue of the National Capital of February 13, 1897, is aimed at the professional reputation of the appellee and touch her therein. Such publication is libelous *per se*, and actionable without proof of special damages. *Steamboat Co.* v. *Davis*, 12 App. D. C. 306; Newell on Slander and Libel, p. 182 (2d Ed.); *Mains* v. *Whiting*, 87 Mich. 172; *Mattice* v. *Wilcox*, 147 N. Y. 624; *Rush* v. *Cavenaugh*, 2 Pa. St. 182; *Gribble* v. *Press Co.*, 34 Minn. 342; *Van Epps* v. *Jones*, 50 Ga. 238; *Spiering* v. *Andrae*, 45 Wis. 330; *Gottbehuet* v. *Hubachek*, 36 Wis. 515; *Gove* v. *Blethen*, 21 Minn. 80; *White* v. *Carroll*, 42 N. Y. 161; *Sanderson* v. *Caldwell*, 45 N. Y. 398; *Camp* v. *Martin*, 23 Conn. 86; *Garr* v. *Selden*, 6 Barb. 416; 1 Starkie on Slander, 118; 13 Am. & Eng. Encyc. L. 314, and cases cited in notes.

2. The injury produced by the libels in this case was an injury to the professional reputation of the appellee. This professional reputation was her sole and separate property, acquired by her in a practice of about sixteen years. She had been conducting this business for thirteen years before her marriage to her present husband, consequently at the time of her marriage, in 1895, her relation to her business was unchanged and she remained in all matters having relation to it as though unmarried. Her husband acquired no legal right whatever in her sole and separate property; and, as the statute expressly states that the appellee can "sue and be sued in her own name in all matters having

relation to her sole and separate property," it would have been error to join her husband with her in this action, which is an action for damages for injury to the sole and separate property of the appellee.   The object of the statute manifestly is to preserve the complete control of the sole and separate property of which she is seized ·at the time of her marriage, or acquired during marriage, in any other way than by gift or conveyance from her husband, wholly in herself, and the language of the statute empowers her alone to do whatever is necessary to the effectual assertion and maintenance of that right of sole control.

The Married Woman's Act of June 1, 1896, is but an enactment in the spirit of the provisions of numerous State statutes permitting a married woman to sue as though unmarried in matters having relation to her sole and separate estate. In England and in forty-four States and Territories such statutes have been enacted, and Kelly on Contracts of Married Women, says, p. 293:   "Under such statutes, the joinder of husband as plaintiff or defendant, is not necessary or required."   To the same effect are the following decisions: *Furror* v. *Chapin,* 13 Kans. 85; *Hayner* v. *Smith,* 63 Ill. 432; *Darby* v. *Callaghan,* 16 N. Y. 73; *Stampoffski* v. *Hooper,* 75 Ill. 242; *Emerson* v. *Clayton,* 32 Ill. 493; *Jay* v. *Railroad Co.,* 2 Daly, 401; *Beach* v. *Miller,* 51 Ill. 208; *Boal* v. *Morgner,* 46 Mo. 48; *Sigel* v. *Johns,* 58 Barb. 620; *Cahom* v. *Coe,* 57 N. H. 556; *Jaycox* v. *Wing,* 66 Ill. 184; *Harris* v. *Webster,* 58 N. H. 481; *Rangler* v. *Hummel,* 37 Pa. St. 130; *Leonard* v. *Pope,* 27 Mich. 145; *Goodyear* v. *Rumbaugh,* 13 Pa. St. 480; *Railroad* v. *Dunn,* 52 Ill. 260; *Berger* v. *Jacobs,* 21 Mich. 215; *Ball* v. *Bullard,* 52 Barb. 141; *Musselman* v. *Galligher,* 32 Iowa, 383 ; *Pancoast* v. *Burnell,* 32 Iowa, 394; *Mewhirter* v. *Hatten,* 42 Iowa, 288; *Summers* v. *Bank,* L. R. 9 C. P. 580; *Wolf* v. *Baueries,* 72 Md. 481; *Stickney* v. *Stickney,* 131 U. S. 136; *Carroll* v. *Reidy,* 5 App. D. C. 59; *Howard* v. *Railroad Co.,* 11 App. D. C. 300 ; *Ramsden* v. *Brearley,* L. R. 10 Q. B. 147 ; *Moore* v. *Robinson,* 27 W. R. 312; *Ashworth* v. *Outram,*

L. R. 5 Ch. D. 923; Harris, Contr. Married Women, 385.

3. Even if the words in the second count charging appellee with interfering or intermeddling with appellant's mail had not been written but had been words of mouth, they would have been libelous as charging her with a criminal offense, viz., violation of a United States statute. R. S. U. S., Sec. 3892.

4. Evidence was admissible to show that the plaintiff had been the wife of defendant, and had been divorced from him; thus explaining how she came to use the name of Wills in her business. In declarations for libel it must appear that the libelous publications refer to the plaintiff, and it is essential that the declaration shall contain a concise and clear statement of such things as are necessary to make all the facts and circumstances of the case intelligible to the court and jury. *Gilbert* v. *Field,* 3 Caine (N. Y.), 329; *Burtch* v. *Nickerson,* 17 Johns. 217; *McCallum* v. *Lambie,* 145 Mass. 234; *Hall* v. *Blandy,* 1 Y. & J. 480.

5. The partnership has a right of action, but so also has an individual partner when the libel is directed to and is such as to injure such partner individually or such partner's individual reputation, etc. The right to bring suit is not limited to the partnership. The partnership may sue for damages to the partnership business, but the individual partners may also sue for injury to their individual professional reputation. It was made perfectly plain to the jury, both by the prayers of the plaintiff and defendant, and also by the charge of the court in the trial below, that the plaintiff could not recover in this action for any injury to the partnership business. It is clear from the following citations that the plaintiff can sue alone in this action: Newell on Slander and Libel, (2d Ed.), p. 374; Townshend on Libel and Slander, (2d Ed.), p. 501, Sec. 303; *Harrison* v. *Bevington,* 8 C. & P. 708; *Rosenwald* v. *Hammerstein,* 12 Daly, 377; *Robinson* v. *Merchant,* 7 Q. B. 918; *Haythorn* v. *Lawson,* 3 C. & P. 196; *Taylor* v. *Church,* 1 E. D. Smith, 279; *Fidler* v.

*Delavan,* 20 Wend. 57; *Tait* v. *Culbertson,* 57 Barb. 9; *Forster et al.* v. *Lawson,* 3 Bing. 452.

6. The appellee was entitled to such damages as the jury believed from all the evidence would fully compensate her for the injuries suffered to her sole profession or business, and sole professional or business reputation, and also such damages as she would reasonably sustain in the future in her said sole business or profession, and the amount to be given lay almost entirely in the discretion of the jury. Newell on Slander and Libel, p. 847; Sutherland on Damages, Vol. 1, p. 810; Odgers on Libel and Slander, pp. 292, 293; *Chicago* v. *Smith,* 48 Ill. 107; *Bourke* v. *Bulow,* 1 Bay. 49; *North* v. *Cates,* 2 Bibb, 591.

Mr. Justice MORRIS delivered the opinion of the Court:

The assignment of errors, eight in number, includes all the rulings made by the trial court in the progress of the case. But these rulings are reducible, and they have in fact been reduced in the argument on behalf of the appellant to three or four principal questions, which we will proceed to consider in their order.

1. The first of these questions, which we do not understand to be greatly insisted on on behalf of the appellant, is whether it was proper for the trial court to permit the divorce proceedings between the appellee and the appellant to be given in evidence. We find no substantial ground of objection to this testimony. It was simply explanatory of the relations between the parties. The appellee had previously testified that she had been a member of the firm of "W. H. Wills & Co.," and that W. H. Wills was at the time her husband, and that she was the "company," and it was proper, and even necessary, thereafter to show that W. H. Wills was no longer her husband. It is true that objection was made to the statement by her that W. H. Wills had been her husband; although no error is here assigned upon the admission of that statement in evidence.

But the statement appears to us to have been entirely proper in explanation of the circumstances which led up to the alleged libel.

2. The second, and perhaps the most important question in the case is, whether the plaintiff, as a married woman at the time of the institution of the suit, being then the wife of Robert C. Jones, could maintain the suit in her own name and right without the intervention of her husband. It is argued that the declaration in both of its counts alleges injury to her individually in her business and profession, and not to the partnership of which she was and continued to be a member, that of " N. W. Wills and Co.," which is specifically mentioned in the alleged libels; that the injury shown by the libels and proved on the trial were injuries to the partnership, and not to the individual plaintiff; that for injuries to the partnership all the members of the firm should have been joined as parties to the suit, and that for the injuries to herself individually, if any there were, the plaintiff's husband should have been made a party to the suit with her. But we think that this argument, although plausible, is not substantial.

In a case like this the distinction between partnership injury and individual injury is shadowy and unreal. There is no partnership in a matter of libel or slander, at least no such partnership as in civil cases would require the joinder of parties as plaintiffs or defendants in consequence of a purely joint right or joint liability. A partnership is not a legal entity in itself which under any proper construction of language could be the subject of slander or libel, although if two or more persons composing a partnership are jointly slandered or libeled, it is not improper that they should join in one and the same suit for damages. To say or to write of a partnership that it is incompetent for the business which it purports to transact, substantially and necessarily means that the individuals who compose the partnership are incompetent, and the injury to the individuals is the

substantial injury in the case. It is no more than to say or to write that A and B, who happen to be partners, were incompetent; and assuredly the mere joinder of two or more persons in one libel and slander does not render it incumbent on such persons to join in one suit in order to have redress for the injury. This we regard as the plain dictate of reason, and it follows from it that the appellee in the present case was under no necessity to join her partner of the firm of N. W. Wills and Company with her in the suit, and that in her own single suit she might recover for all the injury done to her by the alleged libel, if it was a libel, whether that injury resulted to her in connection with another person or in any other way.

But the question recurs whether, being entitled to sue without the joinder of any partner with her, she is then required to adopt the other alternative of joining her husband with her in the suit. We do not think that she is under any such necessity.

There is no doubt as to the general rule laid down by Mr. Chitty in his work on Pleading, that "when an injury is committed to the person of the wife during coverture by battery, slander, etc., the wife can not sue alone in any case, and the husband and wife must join in the action brought for the personal injury or suffering of the wife, and that in such case the declaration ought to conclude to their damage, and not to the damage of the husband alone, for the damages will survive to the wife if the husband die before their recovery;" and this rule remains the law, even in the face of many of the statutes, known as married woman's acts, now so general in all the States of our American Union, as well as in England and her colonies, which provide for the right of married women to sue and be sued independently of their husbands in all matters that concern their own separate property. The courts have held, with considerable uniformity and perhaps not always with reasonable liberality, that these statutes are in derogation of the common law,

and are therefore to be strictly construed and not to be extended beyond the strict letter of their provisions.

Thus, under our act of Congress of April 10, 1869 (16 Stat. 45), incorporated into the Revised Statutes of the United States for the District of Columbia as Sections 727 to 730, both inclusive, whereby it was provided that in this District "the right of any married woman to any property, personal or real, belonging to her at the time of marriage or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband nor be liable for his debts," and that she "may convey, devise, and bequeath her property, or any interest therein, in the same manner and with like effect as if she were unmarried," and "may contract and sue and be sued in her own name in all matters having relation to her separate estate in the same manner as if she were unmarried," it was held that the earnings of a wife while she cohabited with her husband were the property of the husband, and not her property (*Seitz* v. *Mitchell*, 94 U. S. 580); that she could not contract for supplies for the support of her family so as to bind herself individually or her separate estate (*Schneider* v. *Garland*, 1 Mackey, 350); that she could not bind herself or her estate for payment for a carriage to be used by her for her convenience in attending to her property (*McDermott* v. *Garland*, 1 Mackey, 496); that she could not bind herself individually by a contract for the purchase of real estate or of furniture when she had no separate estate in which to place it (*Solomon* v. *Garland*, 2 Mackey, 113), and that a married woman living with her husband could not contract as a sole trader (*Hitchcock* v. *Richold*, 5 Mackey, 414), and no doubt there are other illustrations of her continuing disability.

In the primary period of this class of legislation, when the legislative authority was only feeling its way cautiously, this strictness of construction was proper and wise, and not

inconsistent with the scope and purpose of the legislative enactment. But undoubtedly the tendency of all the more recent legislation in this regard both in England and in the States of our Union and by Congress for the District of Columbia, is towards the total emancipation of married women from all the old feudal restraints imposed upon them by the common law as the supposed consequence of the legal unity of husband and wife, and the present trend of public policy is to place them in all their business relations with the world upon a plane of perfect equality with those who are unmarried. The time would seem, therefore, to have arrived when the courts should no longer give these statutes a narrow or illiberal construction, such as they may have heretofore received, but a broad and reasonable one, such as may best subserve the spirit and the purpose of their enactment.

But no great stretch of construction is needed to make our latest act of Congress on this subject applicable to the present case. The act of Congress of June 1, 1896 (29 Stat. 193), is a very great enlargement of the act of April 10, 1869, the main portion of which it purports in terms to repeal, but the substance of which, with broader powers, it undertakes to re-enact. As will be perceived, it specifically gives to married women each and all the rights which the adjudications which we have mentioned had held to have been denied to them under the previous statute. The act, so far as it relates to the subject-matter under consideration, is as follows:

"*Be it enacted, etc.*, That the property, real and personal, which any woman in the District of Columbia may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and real, personal or mixed property which shall come to her by descent, devise, purchase, or bequest, or the gift of any person, shall be and remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband or liable for

his debts, except that such property as shall come to her by gift of her husband shall be subject to, and be liable for, the debts of her husband existing at the time of the gift.

"SEC. 2. That a married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract in reference to the same in the same manner, and to the same extent and with like effect as a married man may in relation to his real and personal property; and she may, by a promise in writing, expressly make her separate estate liable for necessaries purchased by her or furnished at her request for the family.

"SEC. 3. That any married woman may carry on any trade or business, occupation, or profession, by herself or jointly with others, and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, profession, occupation, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name.

"SEC. 4. A married woman may contract, and sue and be sued in her own name in all matters having relation to her sole and separate property, in the same manner as if she were unmarried; and her husband shall be joined with her when the cause of action is in favor of or against both her and her husband."

As is evident from the last clause of Section 4 last cited, the statute does not yet entirely enfranchise married women from the disabilities imposed by the common law in regard to the matter of suit by them in their own right and in their own individual names; but it greatly enlarges the scope of the separate estate which they may hold; authorizes them to engage freely in any business, occupation, or profession into which they may think proper to enter; secures their earnings to themselves and empowers them to protect their separate estate, their business and their earn-

ings by all legal proceedings appropriate for the purpose. It is very clear that if a married woman now chooses to avail herself of the right restored to her by the statute to engage in any business or profession, she is entitled in her own name and right to have recourse to any and all remedies, either at common law or in equity, necessary or proper to protect her in such business or profession, or to enforce any rights growing out of the exercise thereof; and plainly the right of suit is not confined to actions *ex contractu* alone; the action *ex delicto* may be as necessary as the action *ex contractu* to the protection of her rights of property. It would be a vain and worthless enactment which, after empowering her to carry on business in her own name and right, would then restrict her to actions *ex contractu* for the protection of that business. Protection against tort is as necessary as the enforcement of contract. The statute makes no distinction between the two, and imposes no limitation other than that the suit must have relation to her separate property. It is a maxim of the law and of reason that *qui vult finem vult media.* A grant of power implies a grant of all the means necessary and proper to carry the power into effect. What Chief Justice Marshall, speaking for the Supreme Court of the United States, said in the case of *McCullough* v. *Maryland,* 4 Wheat. 316, 421, in reference to our Federal Constitution, is entirely appropriate here: "Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

There is nothing more calculated to injure, and even to destroy, one's business, occupation or profession than a libel or slander uttered concerning him with reference to such business, occupation or profession. Can it be that the legislature, in the enactment now before us, while giving to a married woman the right to carry on a business or profession

13 Ct. App.—33

on her own account, intended at the same time to withhold
from her the right to pursue the proper remedy for its
preservation and for its protection from unlawful assault?
We can not think so.    That would not be in accordance
either with the letter or the spirit of the statute.    To reach
such a conclusion it would be necessary to give an exceed-
ingly strained construction to the statute, and to import into
it a distinction in the matter of suit which is not sanctioned
by anything contained in the statute itself, and which, on
the contrary, is wholly antagonistic to its scope and purpose.

We have no doubt, therefore, that in a case like the pres-
ent a married woman is entitled to maintain a suit in her
own name without joining her husband therein, for a libel
published concerning her with reference to the business in
which she is engaged.

3.  There remains a third question to be disposed of, which
was raised by the motion in arrest of judgment interposed
by the appellant in the trial court.    This question is whether,
if the second count of the declaration states no sufficient cause
of action, judgment could properly have been rendered upon
the verdict, since the verdict was a general one under both
counts of the declaration; but we think that a good and suf-
ficient cause of action was stated in the second count, and that
therefore the question does not arise.    The matter set forth
in this second count and charged to be libelous is the state-
ment made by the defendant to the effect that the plaintiff
had unlawfully interfered with mail matter intended for
him.    The ordinary inference from this would be that the
plaintiff had been guilty of acts which constituted a crimi-
nal offense against the laws of the United States.    The plain-
tiff in her testimony swears that the statement was untrue,
and there is no attempt on the part of the defendant to sub-
stantiate it.    Now, to charge a person in writing untruth-
fully with the commission of a criminal offense is in itself
libelous, and it does not aid the appellant in this case that
the statement purports to have been taken from a bill filed

in a court of equity. That bill had been filed by the appellant himself. If the statement was untrue, it acquires no special sanctity by being set out in a legal proceeding, nor does the legal proceeding give it the justification of privilege when published in a newspaper or circular such as the appellant was engaged in publishing. The publication was not made in good faith as an item of news in which the public were interested and which the public had the right to learn. The sole purpose was to give wider circulation to a charge vitally injurious to the reputation of the plaintiff for honesty and integrity in the conduct of her business.

We are of opinion that there was no error in the rulings of the trial court in this case, and that therefore the judgment appealed from must be *affirmed, with costs; and it is so ordered.*

On December 23, 1898, *Mr. Baker*, on behalf of the appellant, filed a motion for a rehearing.

On January 3, 1899, the motion was overruled, Mr. Justice MORRIS delivering the opinion of the Court:

A motion for rehearing has been filed in this case. We would be glad to entertain this motion and to grant a rehearing if we thought that there was any probability of our modification of the conclusions heretofore announced in the cause; but upon the original hearing we gave to the case and to all the questions raised in it and raised in this motion for a rehearing all the consideration which we deemed to be justly due to them, and we do not think that upon a rehearing we would reach any different conclusion.

We regret that, in view of the amount involved, the petitioner is not entitled to remove the cause by writ of error to the Supreme Court of the United States; but it may be, that upon a writ of *certiorari*, that court will entertain jurisdiction of the case and review our judgment, and we will be glad to facilitate, so far as we may with propriety, an application to that court for that purpose. *The motion for a rehearing must be denied.*