ALBANY SPECIAL TERM, September, 1847.  *Harris,* Justice.

WEBB and others, ex'rs of Webb, *vs.* DAGGETT & GREEN.

WEED & BARNES *vs.* THE SAME.

Although a debtor in failing circumstances may assign his property in trust for his creditors, giving preferences among them, and selecting his own assignee, yet such voluntary conveyances are regarded with jealousy. They are tolerated, rather than favored. *Per* HARRIS, J.

While courts have felt bound to sanction assignments by debtors for the benefit of their creditors, they have not hesitated to declare them fraudulent whenever, either upon the face of the instrument itself, or from extrinsic evidence, it has appeared that the debtor, in making the assignment, has intended to go beyond an absolute and faithful appropriation of his property to the payment of his debts, and has attempted to secure any advantage to himself, or to embarrass any creditor in the collection of his debt. *Per* HARRIS, J.

The law presumes every man to intend the legal consequences which flow from his own voluntary acts.

Accordingly, where it is apparent that the effect of a debtor's preferring a fictitious debt, in an assignment of his property for the benefit of creditors, must be either to defraud the *bona fide* creditors of the assignor, or to delay and embarrass them, in the collection of their debts, courts are bound to consider that the assignment

---

Webb *v.* Daggett.

---

was executed with that fraudulent intent. And if so, then they are also bound
to declare it illegal and void as against such creditors as seek to avoid it.

When assignees under an assignment declared void as against creditors are charge-
able with costs.

In Equity. Henry L. Webb and Alfred Douglass recover-
ed a judgment against Derick C. Groot, on the 15th day of
May, 1841, for $347,75; upon which executions were issued
on the 26th of April, 1845, to the sheriffs of Albany and Schenec-
tady, with directions to collect $249,75 and interest thereon
from May 20, 1841, and sheriff's fees. In 1843, Douglass
assigned his interest in the judgment to Webb. The plaintiff
in the second cause recovered a judgment against Groot, on the
9th day of June, 1841, for $1391,91, upon which executions
were issued to the sheriffs of Albany and Schenectady on the
29th day of May, 1845. On the 4th day of March, 1841, Groot
being in failing circumstances, made an assignment of all his
property real and personal, except " his household and kitchen
furniture, and all his plate and personal property in his dwelling
house" to the defendants Daggett and Green, in trust for his
creditors; dividing his creditors into several classes, and pre-
ferring them according to their respective classes. The property
assigned consisted, principally, of real estate in the counties of
Albany and Schenectady. On the 26th of March, 1840, Groot
had confessed a judgment in favor of Green for about $4600,
without consideration. This judgment was placed in the first
class of preferred debts, in the assignment. Both the defen-
dants admit that the indebtedness thus secured was wholly
fictitious. The bill in each of these causes was filed on the
same day the executions were issued, for the purpose of having
the assignment declared fraudulent and void as against the
plaintiffs' judgments. Groot was made a defendant in each
suit, but after the causes were in readiness for hearing upon
pleadings and proofs he died.

*M. T. Reynolds & W. D. White*, for the plaintiffs.

*P. Potter & S. A. Daggett*, for the defendants.

Webb *v.* Daggett.

HARRIS, J.   Though it is now entirely settled in this state that a debtor in failing circumstances may assign his property in trust for his creditors, and give such preferences among them as he may choose, and may also, without the consent and even against the will of all his creditors, select the assignee who is to execute the trusts of the assignment, yet such voluntary conveyances have not ceased to be regarded with jealousy. They are rather tolerated than favored.   The principle of allowing an insolvent debtor to give, arbitrarily, such preferences, among creditors equally worthy, as may result in the payment of the entire debt of one and the loss of the entire debt of another, has been condemned in the strongest terms, by many of the wisest statesmen and the most enlightened jurists of our country.   Hence it is that most, if not all the laws which are passed for the relief of insolvent debtors, are found denying their advantages to such debtors as have, in the disposition of their property, given preferences among their creditors.   But while courts have felt bound to sanction such conveyances, they have not hesitated to declare them fraudulent whenever, either upon the face of the instrument itself, or from extrinsic evidence, it has appeared that the debtor, in making the assignment, has intended to go beyond an absolute and faithful appropriation of his property to the payment of his debts, and has attempted to secure any advantage to himself, or to embarrass any creditor in the collection of his debt.

In the case under consideration, Groot, not content with having created a fictitious lien upon his property, the effect and probable design of which was to discourage and prevent his creditors from enforcing the collection of their debts by a sale of his property, proceeds to commit an actual fraud upon his creditors by placing all his property in the hands of trustees, with directions to them to pay this fictitious debt in preference to his just creditors.   If such a transaction can be sustained, what limit shall be set to the perpetration of fraud and injustice by the insolvent debtor?   It is said that Groot was upwards of eighty years old, and very infirm and imbecile. This may be an extenuation in the moral aspect of the trans-

Webb *v.* Daggett.

action, but it cannot change its legal character. The law presumes every man to intend the legal consequences which flow from his own voluntary acts, and as it is apparent that the effect of preferring this fictitious debt, must have been either to defraud the bona fide creditors of the assignor, or to delay and embarrass them in the collection of their debts, the court is bound to consider that the assignment was executed with this fraudulent intent. And if so, then the court is also bound to declare it illegal and void as against such creditors as seek to avoid it.

There must be a decree, therefore, in each of these suits, declaring the assignment fraudulent and void as against the plaintiffs, so far as it conveys to the defendants any property upon which, but for the assignment, the plaintiffs' judgments and executions, respectively, would have been a lien.

The only question that remains is with respect to the costs. Had Groot lived, it would have been a matter of course to decree costs against him. But it has not been usual to charge the assignee with costs, even when the assignment was fraudulent on its face; except in cases of gross abuse of his trust. In this case, although it is true that the defendant Green is the party in whose favor the fraudulent preference, which vitiates the assignment is made, and although some of the witnesses seem to have understood him as claiming this fraudulent demand as a charge upon the assignment, I am not satisfied that he ever intended to hold it out to the creditors of Groot as a valid claim upon the trust funds. On the contrary, it appears that some of the plaintiffs, at an early day, were in fact informed that there was nothing due upon the judgment which Groot had confessed in favor of Green, and that no claim was made against the assignment on account of that judgment. It is abundantly shown that the property assigned, so far as it has been disposed of by the assignees, has been sold for its full value, and the proceeds applied to the payment of the bona fide creditors of Groot preferred in the assignment. The only act of fraud with which the assignees can be held chargeable is, I think, in suffering Groot to continue in the

occupation of a small portion of the real estate assigned, called the homestead. For this they will be sufficiently punished if left, as they must be, to bear, themselves, the costs of a protracted and expensive defence of these suits. Neither party, therefore, is to have costs as against the other.

