Daniels, J.
—The assignment which it was the object of the plaintiff as a judgment creditor whose execution had been returned unsatisfied to set aside, was executed by the defendants both as individuals and as members of the firm of Halsted, Haines & Co, They were merchants carrying on business in the city of New York and became largely indebted as copartners. Their assignment was made for the benefit of their creditors on the 12th of July, 1884, and it contained very large preferences in favor of persons and corporations to whom it was alleged the firm was indebted.
The objection has been taken to the assignment that it failed to provide for the payment of all debts of the firm before directing the surplus which should remain, to be returned to the assignors. But this objection does not appear to be well supported. For by the third subdivision of the assignment, the individual property of each of the assignors has been directed to be applied first to the payment in full or pro rata of his individual creditors. And if a surplus of such individual property should remain, then it was directed by the assignment to be applied towards the payment of the copartnership debts and liabilities of the parties of the first part. It was further directed by the fourth paragraph of the assignment that “the net proceeds of the copartnership property, together with the surplus, if any, of the proceeds of the individual property of the said parties of the first part, or either or each of them, shall be used in the payment in full of the copartnership debts and liabilities of the said parties of the first part.” The assignment then directed in case the proceeds should be insufficient for that purpose they should be applied to the payment of the copartnership debts and liabilities as thereafter provided. But if insufficient to pay the partnership debts in full, then the same were to be applied, after the payment of the employees of the firm, to the payment of the preferences. And by the fourth subdivision it was directed that if any surplus should remain “after the payment of all just debts and liabilities of the parties of the first part, the party of the second part shall return the same to the parties of the first part, their executors,” etc.
These clauses clearly contemplated that the whole of the *574 assigned property should be applied to the payment of the individual and joint debts, either fully or partially, as they might prove sufficient for the purpose, before any surplus should be returned to the assignors. And while it contained no express direction, the assignment clearly embodied an implied direction that the surplus should not bel returned until after all the debts and liabilities of the assignors should be paid and satisfied. This intention of the-assignors is to be implied with reasonable clearness from the assignment, and that sufficiently answers the objection now considered to sustain the ruling of the court overruling-it at the trial.
Among the persons preferred in the second class of preferences is Robert Halsted for the sum of $24,800.
This preference was very clearly shown to have been excessive to the extent of the sum of $4,000. But that excess, it was proved upon the trial and found by the court, was added by mistake, and it was, therefore, concluded not to render the assignment illegal. Whether this circumstance reheves the assignment from the objection taken upon the excess in the preference over and above the indebtedness • does not require to be finally considered or disposed of at this time, for under the conclusions arrived at by the court upon the trial, the preference for the indebtedness itself appears to have been unlawful.
The indebtedness arose out of United States bonds advanced by Robert Halsted, and upon which a loan of $20,-000 was obtained. By a mortgage executed by Emily S. Haines on the 4th of September, 1883, to secure the loan, it was referred to as having been made to the firm of Halsted, Haines & Co. And an instrument was executed on the lYth of August, 1883, and subscribed in the firm name,acknowledging the loan to have been made to the firm and secured by this mortgage. But evidence was given upon the trial by William M. Halsted, in which he stated that Robert Halsted refused to make the loan for the firm, and made the loan to the witness. This evidence of the witness was-commenced by the question inquiring of him:
Q. When you applied for a loan for your firm did Robert Halsted refuse to give you money for the firm ?
A. Did he; yes.
Q. Did he refuse to loan ypu, the firm of Halsted, Haines & Co., as contra-distinguished from William M. Halsted?
A. He loaned the money to me at my request. .
Q. Upon collateral security ?
A. He was not asked to loan it upon my credit or the firm’s credit; it was upon security furnished him; at the time he loaned it to me, William A. Haines gave him a. mortgage as security on property in Sixty-fourth street to *575 the extent of the market value of the bonds, whatever it was, at that time, and subsequent to that time I gave him additional security, and that within a week; some where about September third; but the agreement was made before I gave him the security.
It further appeared that on or about the 3d of September, 1883, William M. Halsted executed and delivered a deed to Eobert Halsted for the consideration of $34,000, conveying to him lands situated in the city of Chicago and at two different localities in the state of Michigan. Upon this and other evidence contained in the case the court did find in the first instance that the loan was made to the firm of Halsted, Haines & Co., and continued to be unpaid, and that this deed was security for the payment of the loan. And if these findings had remained undisturbed or unchanged, the preference, to the extent of $24,400, would be capable of being sustained, for the mortgage executed by Emily S. Haines, and mentioned in the evidence of William
M. Halsted, as the mortgage of William A. Haines, was no more than a security for the indebtedness. It in no way satisfied or extinguished it, and it was accordingly a legal subject of preference by the assignment, although its future payment had been secured in this manner.
But the case was not left in this condition, for in the findings proposed by the plaintiff the fact was found and stated by the court that “Robert Halsted had loaned to the said William M. Halsted United States four and one-half per cent bonds of the face value of $20,000, then worth in the market $22,400.” And it was further found, in like manner, that the consideration of the deed conveying the Chicago and Michigan lands “was solely and only the sums due as aforesaid to the said Eobert Halsted and Laura P. Halstead with interest.” And after that the court found the further fact “that the said deed was executed and delivered to the said Eobert Halsted and was received by him as payment for the said bonds and in trust to pay the surplus to the said Laura P. Halsted for the moneys due to her as aforesaid.” According to these findings, the debt created by the loan of the bonds was the debt alone of William M. Halsted, and its payment could not be made the lawful subject óf preference as it was by the assignment out of the proceeds of the partnership property. This was considered and so held in Wilson v. Robertson (21 N. Y., 587). And also in Schiele v. Healy (61 How., 73), and National Bank, etc., v. Cohen (6 N. Y. State Rep., 318).
But, even if it could be held in any way that the debt was an indebtedness of the firm, still, as it was paid by the execution and delivery of the deed, its further payment could not legally be directed out of the proceeds of the as *576 signed property. Such a direction, if it were complied with, would practically result in giving away so much of the assigned estate to the person permitted" to receive it, and that would be a fraud upon the other creditors of the assignors. And where a direction in an assignment for the benefit of creditors is attended with that result, the law adjudges it to be fraudulent as against judgment creditors after the return of execution, and legally contesting its validity. Nichols v. McEwen, 17 N. Y., 22; Coleman v. Burr, 93 id., 18, 31.
And this result cannot be avoided by the fact that in the decision upon which the judgment has been entered the loan was found to have been made to the firm and the deed to have been no more than a security. For as between conflicting or contradictory findings of fact the party appealing is entitled to rely upon those as having been acurately made, which are the most favorable to himself. Schwinger v. Raymond, 83 N. Y., 193.
A very large number of additional objections have been taken to the preferences directed by the assignment, and to the conduct of the assignors in withdrawing funds from the partnership business and disposing of property immediately prior to the time of the assignment, and from omissions to insert in their schedules other property not referred to, which the creditors were entitled to have applied to the payment1 of their debts, but they do not now demand particular consideration.
Some of them depend largely upon fragmentary evidence obscurely developed at the trial, which defects may be obviated upon a further examination of the witnesses presenting the points dependent upon their evidence in a more clear and satisfactory manner. And the probability of such changes in the case of itself suggests the propriety of declining the consideration of these objections in the present disposition of the appeal. Upon the evidence and findings relative to the loan of the bonds and the money obtained by their hypothecation, the judgment is very clearly erroneous. The objections which have been considered are incapable of being removed or answered, and without discussing any other features of the case, it should be disposed of on the evidence and findings affecting this part of it. It is true that the court has found generally that the assignment was not made with intent to hinder, delay or defraud the creditors of the assignors, but this general finding is inconsistent with those which have been already mentioned, concluding the fact to be that the indebtedness created by the advance of the bonds was the individual indebtedness of William M. Halsted, and that it was in fact paid by the deed afterwards executed and delivered by him to Robert Halsted.
*577 The judgment should be reversed and a new trial ordered, with costs to the plaintiff to abide the event
Brady and Bartlett, JJ., concur.