(18 Misc. Rep. 408.)

### UNIVERSAL BAG CO. v. FENSLEY et al.

(Supreme Court, Special Term, New York County. November, 1896.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUDULENT PREFERENCES.

An insolvent, some months before his assignment, sold real estate, giving the money received therefrom to his wife. This money he afterwards borrowed, but gave no note or other acknowledgment of the debt. Three days before the assignment he repaid the alleged debt to his wife. The assigned property was purchased from the assignee in the name of the wife with the amount thus taken from the assets, and the business reopened by the husband under a power of attorney from the wife. *Held*, that the evidence was sufficient to sustain a complaint to set aside the assignment as in fraud of creditors.

Action by the Universal Bag Company against William A. Fensley and others to set aside an assignment for the benefit of creditors. Judgment for plaintiff.

Albridge C. Smith, for plaintiff.
Charles S. Taber, for defendants.

PRYOR, J.    When the validity of an assignment is unchallenged by creditors, not they, but the assignee, may maintain an action to reclaim property transferred by the assignor in fraud of the assignment.    Swift v. Hart, 35 Hun, 128; Spring v. Short, 90 N. Y. 538, 544.    Here the plaintiff impeaches the assignment, and impeaches it on the ground that, in connection with a previous transfer by the assignor, it was a device to defraud creditors.    If such be the fact it is open to attack by creditors, and, as against them, is of no avail. Rothschild v. Salomon (Sup.) 5 N. Y. Supp. 865, 868; Chambers v. Smith (Sup.) 14 N. Y. Supp. 706, 711.

Upon a critical examination of the evidence, I am of opinion that the defendant, finding himself in a condition of insolvency, and wanting to continue business free from molestation by creditors, made the assignment in order to a purchase of the assigned property in the name of his wife, and to effect that purchase abstracted $1,-500 from the assigned assets.    The fact is undisputed that he now conducts the business precisely as before the assignment, except that he purports to conduct it in his wife's behalf, and as her agent. The evidence compels the inference that, contrary to his professions, he is carrying it on for himself as principal (McCabe v. Brayton, 38 N. Y. 196, 198), and this fact is significant of fraud in the assignment.

The decisive question in the case is, was the debt of $1,500 which the defendant pretended to owe his wife, real or fictitious?    If real, he had a right to discharge it by a preferential payment (Dudley v. Danforth, 61 N. Y. 626); if fictitious, then the intentional withdrawal in contemplation of the assignment of the $1,500 from its operation, inevitably invalidates it (Coursey v. Morton, 132 N. Y. 556, 30 N. E. 231; Chambers v. Smith [Sup.] 14 N. Y. Supp. 706, 711).

The story of this alleged debt, as told by the assignor and his wife, suffices to stamp it as a fabrication.    Owner of three lots in Norwich, Conn., he proposed to deed them to her as a gratuity; but she suggested, instead, that he should sell them, and give her the money.    Had the deeds been executed, there could have been no doubt of the transaction; but, as it is, the donation of the money is evinced by no document, and confirmed by no circumstance.    The special reason assigned for the wife's preference of cash to property, namely, that she might pay off a mortgage on her house, was a pretense; for the mortgage still subsists in its original amount.    This large gift to his wife is improbable, upon the condition of the assignor's business, then not seemingly so prosperous as safely to spare such a considerable portion of capital.    The lots, it is said, were sold for the aggregate sum of $1,500.    The price the husband received in bills, brought them to his wife, and she kept them upon her person,—a portion for the period of a year, and the residue for months.    Then, it is alleged, she lent the money to her husband. But no scrap of paper attests the loan; no time stipulated for its repayment; no interest agreed or paid; no dates given of the loans, or of their deposit in bank; no evidence of any intimation of the loan to any person before the assignment.    But, if a valid debt of the husband to the wife, why did he not prefer her in the assignment, instead of diverting the amount from his assets?    Obviously, be-

cause he needed the cash with which to buy the assigned property in his wife's name. The pretended loan was repaid three days before the assignment, and how? By a check, not indicated on the stub, nor disclosed to a committee of creditors among the vouchers submitted by the assignor, but produced only when its existence was discovered, and he taxed with its disappearance. No receipt by the wife is apparent.

The sinister aspect of the assignment already revealed is aggravated by the circumstances of the purchase of the assigned property. The $1,500 given by the assignor to his wife was returned to him the day before the assignee's sale, and he handed it to Tompkins to make the purchase in the name of his wife. Why did he not buy himself? Evidently, to avert suspicion. And the formal delivery of the money to the wife in the first instance was manifestly with the purpose of introducing her as an ostensible party to the transaction. But, in truth, she had no agency in it. Tompkins made the purchase at the request of the assignor, and with funds supplied by him. The pretended buyer, Mrs. Fensley, did not speak to Tompkins, nor attend the sale, nor give "any personal attention whatever to the business." So much of the money as was not disbursed at the sale, Tompkins returned to the assignor, and it is not apparent that he restored it to his wife. Thus repossessed of the property he had assigned, he resumed the business under a power of attorney from his wife. But he conducts it in fact as his own. She takes no part in it, and knows nothing of its condition. Ostensibly her agent, it is not apparent that he receives any compensation for his services, or pays the profits, or in any way accounts to his pretended principal.

From this concourse of suspicious circumstances, what other inference is possible than that the assignment was a fraud upon creditors? As said by Barrett, J., in Abegg v. Schwab (Sup.) 9 N. Y. Supp. 681, 682:

"It is true the case may be said to be wanting in what is technically called 'direct evidence,' but the circumstantial evidence of fraud is abundant and conclusive. Many links in the chain, considered separately, may well appear to be wholly unobjectionable, and yet all the links, considered in their relation to each other and as a whole, may point unerringly to fraudulent purposes and acts."

As said by Van Brunt, P. J., in Smith v. White (Sup.) 2 N. Y. Supp. 855, 858:

"The operations of business men are entered in their books, and payments are made by checks rather than by bills; and it is only when it is deemed desirable that the transaction should not be traced that bills are resorted to."

Again:

"Courts scrutinize with the utmost care business transactions between husband and wife, alleged to be fraudulent as against creditors, because fraud is so easily practiced and concealed under cover of the marriage relation." White v. Benjamin, 150 N. Y. 258, 265, 44 N. E. 956, 958.

"Dealings between husband and wife, which result in the appropriation of the husband's property for the payment of a debt claimed to be due to the wife, to the exclusion of other creditors, furnish uncommon opportunities for the perpetration of fraud, and should be carefully and rigidly scrutinized." Manchester v. Tibbetts, 121 N. Y. 219, 222, 24 N. E. 304, 305.

Other features of the transaction in question are indicative of fraud, but enough is already shown to condemn the assignment. Passavant v. Cantor (Sup.) 17 N. Y. Supp. 37. In any event, the transactions between the assignor and his wife were sufficiently discredited to exact from her satisfactory proof of their good faith. Seitz v. Mitchell, 94 U. S. 580; Carson v. Stevens, 40 Neb. 112, 58 N. W. 845; Burt v. Timmons, 29 W. Va. 441, 2 S. E. 780. . The testimony of the parties implicated in the fraud, though called as witnesses by the plaintiff, is not conclusive against its existence. Becker v. Koch, 104 N. Y. 394, 400, 401, 10 N. E. 701; Elwood v. Telegraph Co., 45 N. Y. 549, 553, 554; Babcock v. Eckler, 24 N. Y. 623, 632.

Counsel for the defendant objects to the evidence of the transfer of the judgments, on the ground of informality in the acknowledgment by the corporation; but the papers were otherwise authenticated. Trustees v. McKechnie, 90 N. Y. 618.

Judgment for plaintiff, with costs.