UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BILLY R. BAKER; THEODORE W.
CAMDEN, JR.; ROBERT J. BUNTING;
ROAMIE WEST; JAMES R.
FREEMAN, JR.; CHARLES S. SMITH;
BILLY R. THOMAS; JUDY S. TATE;
ROBERT A. MCGINN; GORDON R.
FINCHAM,

No. 95-1353

Plaintiffs-Appellants,

v.

BASF CORPORATION; BASF
CORPORATION RETIREMENT PLAN OF
JANUARY 1, 1987,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
James E. Bradberry, Magistrate Judge.
(CA-94-40-4, CA-94-41-4, CA-94-42-4, CA-94-43-4, CA-94-44-4,
CA-94-45-4, CA-94-46-4, CA-94-47-4, CA-94-48-4, CA-94-49-4)

Argued: November 1, 1995

Decided: April 22, 1996

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Harrell Shoemaker, Jr., PATTEN, WORNOM &
WATKINS, Newport News, Virginia, for Appellants. James Patrick

McElligott, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellees. **ON BRIEF:** Joseph Henry Latchum, Jr., PATTEN, WORNOM & WATKINS, Newport News, Virginia, for Appellants. David F. Dabbs, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ten individuals ("the Appellants") filed substantially identical complaints, which were consolidated, against BASF Corporation ("BASF") and the BASF Corporation Retirement Plan of January 1, 1987. Seeking relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1000 et seq., as amended by the Retirement Equity Act of 1984 and the Tax Reform Act of 1986, the Appellants alleged that they were entitled to severance pay from BASF because their employment with BASF terminated when BASF sold its Williamsburg, Virginia plant ("the Plant") to Mann Industries. The district court entered summary judgment for BASF, finding that the written terms of BASF's severance plan comported with ERISA procedure.

Appealing the district court's grant of summary judgment, the Appellants allege that BASF 1) failed to pay them severance pay to which they were entitled under a written severance plan; and 2) violated ERISA's reporting and disclosure requirements by failing to fully inform them of their severance benefits rights. We review de novo the district court's grant of summary judgment regarding ERISA claims under 29 U.S.C. §1132. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Upon review, we affirm the district court's order.

2

I.

Four and one-half years after either having been let go or by voluntarily resigning from Mann Industries, the Appellants sought severance benefits from BASF. The Appellants had been salaried, non-union employees at BASF's Plant until November 17, 1989, when BASF sold its acrylic fibers Plant to Mann Industries. Upon the Plant's sale to Mann Industries, the Appellants' employment transferred from BASF to Mann Industries.[1] The Appellants continued working without interruption at the same pay received from BASF. Each received in wages or salary, a sum greater than what each would have received in severance had BASF, instead of selling, closed its doors. Although Mann Industries offered no severance or retirement plan, it did provide its employees with health benefits and a 401(k) "matching" retirement plan.

The Appellants now contend that BASF management beguiled them into accepting employment with Mann Industries by assuring them they would be "taken care of" and that those accepting employment with Mann Industries would receive severance pay from BASF. Notwithstanding their allegations, at the time of the sale, only those salaried employees not offered jobs with Mann Industries and not transferred internally to another BASF division received severance pay from BASF. In sum, each salaried BASF employee continued working for either Mann Industries or another BASF division or received severance pay from BASF.

_____

[1] Three of the ten complainants worked at the Plant since its opening in 1958 by Dow Chemical. The remaining seven worked for all subsequent owners aside from the original one. In 1966, the Plant was sold to a joint venture Dow-Badische (owned in equal shares by Dow and Badische Corporation). Dow-Badische sold the Plant outright to Badische in 1976. During a corporate reorganization in 1985, BASF acquired the Plant from Badische. The appellants mischaracterize the '66 and '76 sales as "restructurings," when in fact they were outright sales--the Plant's beneficial ownership affirmatively changed hands each time. Not a single appellant received severance pay from the Plant's previous owner when ownership transferred.

II.

A.

Despite the district court's finding that it was neither irrational nor clearly erroneous under ERISA for BASF to have denied severance to those salaried employees continuing employment with the purchasing concern when the division in which they worked was sold, the Appellants argue that genuine issues of material fact exist as to whether the language of the May 1989 plan was ambiguous and whether BASF arbitrarily and unreasonably interpreted the May 1989 plan in violation of ERISA. Upon examination of the severance policy's language, we affirm the decision of the district court.

Employee eligibility for ERISA benefits is governed primarily by the plan's language. Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993). To prevail, therefore, the Appellants must demonstrate that despite the beneficial change in ownership and their continued employment with the ongoing concern, they were eligible for severance pay under the May 1989 plan in existence during the Plant's sale. The Appellants maintain that both the district court and BASF misinterpreted the May 1989 plan's language by finding them ineligible for severance benefits. The May 1989 plan contains the following provision defining severance eligibility:

> Employees who have completed at least one year of continuous service, but who have been terminated for reasons such as declining business, elimination of position, or discontinuance of operations, where the continuance of employment ceases permanently will be eligible for the provisions outlined in this policy.

Under the plan's plain language, an employee cannot collect severance unless his employment "ceases permanently." The Appellants' employment did not cease, but continued with the purchasing concern without interruption or hardship and at the same rate of pay.

The Appellants insist, however, that the May 1989 plan's language is ambiguous and that the district court should have considered extrin-

4

sic evidence to illuminate the intent of the severance eligibility provision. The Appellants rely on <u>Fuller v. FMC Corp.</u>, 4 F.3d 255 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1062 (1994), in support of their proposition. In <u>Fuller</u>, FMC Corp.'s severance plan provided severance to terminated employees, who were parenthetically defined as those employees "laid off due to the closing of a plant or location." <u>Id</u>. at 259. Because we found the concept of "plant closing" to be ambiguous, we looked to extrinsic evidence of past practice to illuminate whether the sale of a plant constituted a plant closing. And upon reviewing every previous FMC plant sale it became apparent that FMC had never paid employee benefits to employees offered continuing employment with a purchaser. Accordingly, we held that the sale of the plant did not constitute a plant closing and to label the appellants "terminated employees" would unjustly award them severance to which they were not entitled. <u>See Hickey v. Digital Equipment Corp.</u>, 43 F.3d 941, 947-48 (4th Cir. 1995).

In the instant case, we need not examine extrinsic evidence of past practice because the plan's severance eligibility provision is unambiguous. The clear and unambiguous severance plan language controls. <u>See Gillis v. Hoechst Celanese Corp.</u>, 4 F.3d 1137, 1142 (3rd Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1369 (1994). The May 1989 plan clearly precludes severance <u>unless</u> "the continuance of employment cease[d] permanently." Here, the Appellants' employment never ceased, nor was it interrupted for a day or even a pay period.

Once employees of the selling company became employees of the purchasing concern, the selling company was no longer obligated to provide them severance with respect to subsequent layoffs. <u>Hickey</u>, 43 F.3d at 947; <u>see Holland v. Burlington Industries, Inc.</u>, 772 F.2d 1140 (4th Cir. 1985) (holding no job termination under a severance policy where the plaintiffs continued employment with the purchaser of a plant), <u>aff'd mem.</u>, 477 U.S. 903 (1986); <u>Sejman v. Warner-Lambert Co. Inc.</u>, 889 F.2d 1346 (4th Cir. 1989) (holding that when purchaser later laid off plaintiffs and plaintiffs sought severance from former employer/seller, denial of severance was justified because termination of plaintiffs was done by the purchaser not by the original employer), <u>cert. denied</u>, 498 U.S. 810 (1990). We affirm, therefore, the district court's finding that BASF's decision denying severance pay to salaried employees offered continuing employment in the purchasing

5

company when the division in which they worked was sold was neither an irrational nor clearly erroneous decision under ERISA.[2]

B.

The Appellants alternatively argue, in the event that we found the language of the May 1989 plan unambiguous, that BASF should be fined for violating ERISA's reporting and disclosure requirements by intentionally and secretly withholding details of the May 1989 severance plan. 29 U.S.C. § 1132. Their grievance arises from BASF's 1988 modification of the pre-existing severance policy, known as the Badische policy.[3] The Appellants contend that 29 U.S.C. § 1024(b)(1)(A) entitled them to view the May 1989 plan within 90 days after they became beneficiaries under that plan--essentially 90 days after the May 1989 plan's effective date.

The Appellants cite only one case, Blau v. Del Monte Corp., 748 F.2d 1348 (9th Cir. 1984), cert. denied, 474 U.S. 865 (1985), in support of their proposition that BASF intentionally and secretly withheld details of the May 1989 severance plan. Blau, however, is readily distinguishable from the case at hand. In Blau , the management completely concealed the benefits policy. The employer neither published the policy nor informed the plaintiffs of its existence, contents, or terms and such intentional deceitfulness caused plaintiffs to suffer substantial and irreparable harm. Id. at 1351. In contrast, BASF did

_____

[2] The district court held, in the alternative, that the Appellants' allegation that BASF informed them either directly or indirectly that they would receive severance pay constituted an oral modification to the severance contract; acknowledging that, under Virginia law, such contract modifications are governed by a three-year statute of limitations, the district court barred the Appellants' action against BASF. The Appellants now argue, however, that the extrinsic evidence was not submitted to suggest that oral modifications to the severance plan existed, but to prove that questions of material fact existed evidencing BASF's intent regarding their severance benefits. We need not address this issue because we affirm on different grounds.

[3] The Appellants contend that BASF surreptitiously revised its 1983 severance plan--the "Badische policy--"into the "May 1989" plan, before Mann Industries purchased the Plant.

6

not withhold the May 1989 plan from Plant employees as contended. At informal information gatherings, BASF told employees of the existence of the May 1989 severance plan, explained the schedule of benefits available under the policy, and explained the circumstances under which benefits would or would not be provided. Thus said, we turn to a discussion of ERISA's reporting and disclosure requirements.

An employer may not arbitrarily deprive its employees of critical information regarding their benefit and retirement plans. See 29 U.S.C. § 1132(c) (imposition of civil penalties upon employers refusing to furnish information to employees who have requested information). Sections 1022(a)(1)[4] and 1024(b) provide guidelines as to when and how often an employer must disseminate benefits information to its employees. Section 1024(b)(1)(A) states:

> (b) Publication of summary plan description and annual report to participants and beneficiaries of plan.
>
> Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
>
> (1) The administrator shall furnish to each participant, and each beneficiary receiving

_____

[4] Section 1022(a)(1) reads:

> (a)(1) A summary plan description of any employee benefit plan shall be furnished to participants as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title.

7

benefits under the plan, a copy of the summary, plan description, and all modifications and changes referred to in section 1022(a)(1) of this title--

(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, . . . .

29 U.S.C. § 1024(b)(1)(A). The 90-day window requires the employer to furnish plans to new participants within the first 90 days after they become a participant.

The Appellants argue that BASF violated § 1024(b)(1)(A) by not permitting them to view the benefits plan within 90 days of its effective date. The Appellants, however, were preexisting participants in a preexisting plan--the Badische policy. In their failure to read § 1024(b)(1) in its entirety, the Appellants missed the last sentence of § 1024(b)(1), which states:

If there is a modification or change described in section 1022(a)(1) of this title, a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan.

29 U.S.C. § 1024(b)(1). Thus, once a benefits plan undergoes modification or change, the employer has 210 days after the end of the plan year to notify each participant and beneficiary of the modifications and changes.

BASF's May 1989 Plan, was not a new plan, but a revision of a pre-existing benefits policy. Pursuant to § 1024(b)(1), BASF had 210 days from the plan's year end to furnish the Appellants, with any modifications or adopted changes. The plan year did not end until December 31, 1989.[5] Accordingly, BASF had until at least July 1990

_____

[5] Absent evidence of how BASF calculates its taxable year, we calculate the plan year as the calendar year. See 52 Fed. Reg. 22716 (June 15, 1987) (to be codified at 26 C.F.R. Part 1).

to disseminate plan modifications and changes to employee beneficiaries and participants. By July 1990, the Appellants were employees of Mann Industries. Because the Appellants were no longer BASF employees, they were no longer qualified participants in the severance plan. Thus, the district court did not err in finding that BASF did not violate ERISA procedure.

III.

For the foregoing reasons, the district court's order granting BASF summary judgment is

AFFIRMED.

9